## Boud *versus* Bronson.

1. A wheelwright indebted to plaintiff and his father, agreed to make a wagon for plaintiff; there was evidence that the wheelwright delivered the running-gears to plaintiff, who afterwards bought the bed from him: the plaintiff retained these several months, bought other materials, contracted with the wheelwright to complete it for a certain sum for the whole cost, and took all the materials to his shop, plaintiff to pay the wheelwright's debt to the father; he afterwards settled with the wheelwright, when there was less due than the father's debt which plaintiff paid; the wagon remaining at the shop was levied on for the wheelwright's debt. In replevin against the purchaser, *Held*, that this evidence did not show legal fraud.

2. The evidence showed such long-continued and exclusive possession in the plaintiff as could be affected only by actual fraud.

3. Plaintiff having retained the property so long, the fact that under a new contract the wagon was placed with the wheelwright to be finished was not fraud on his creditors.

4. Dunlap *v.* Bournonville, 2 Casey 72; McMarlin *v.* English, 24 P. F. Smith 296, referred to.

January 17th 1876.     Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Montgomery county:* Of July Term 1875, No. 46.

This was an action of replevin brought March 13th 1871, by William H. Boud against Henry Bronson, for a light wagon; the defendant gave a claim-property bond, and retained the goods; he pleaded property in himself.

The case was tried March 3d 1874, before Ross, P. J.

The plaintiff testified, that a wagon belonging to him had been sold on the 11th of March 1871, at constable's sale, as the property of John Roudenbush; that he gave notice at the sale in the presence of defendant, that the wagon was plaintiff's; defendant heard him; defendant bought and took possession of the wagon; the wagon had been taken from the shop of Roudenbush, who was a wheelwright, to be sold; plaintiff had taken it from his father's house to Roudenbush's to have it done up. Roudenbush then lived in Montgomery county; he was indebted to the father, and plaintiff made arrangements with Roudenbush at the time to pay by his father's account, for doing up the wagon.

On cross-examination plaintiff said: He did not buy the wagon of Roudenbush; he had agreed with Roudenbush in 1869 to build him a wagon; it was not this wagon; this wagon was built on two contracts. In the first place Roudenbush was to build him a certain kind of wagon which he could not build; plaintiff took what part he had built and made arrangements afterwards for the balance; he took the running-gears at $30, he bought the wagon-bed afterwards on his father's account, and paid $25 for that; the trimming and painting were to cost a certain sum; plaintiff was to buy the trimming and the whole wagon was to cost $186; it was

[Boud v. Bronson.]

to be finished in the beginning of 1870 ; it was never finished ; there had been a final settlement about the wagon about February 20th 1871 ; beside a debt owing by Roudenbush to plaintiff, there were due after paying blacksmith and trimming materials about $71 ; this did not include his father's bill, which was put at $60 ; the bill had nothing to do with the wagon, except how Roudenbush had agreed it should be credited on the wagon ; he did not know that his father's account had ever been closed by payment ; it was not taken into account when the wagon was sold ; plaintiff then owed on it $70.81 ; plaintiff paid for iron works and trimmings.

On re-examination he said : Roudenbush owed him for shoe-making $28.29 ; he had paid for iron work and trimmings $79. Roudenbush was about moving into Chester county near the Valley Forge, and delivered to plaintiff the running-gears ; he bought the bed afterwards ; then they arranged that the wagon should cost $186 " all told ;" his father's bill $81 was to go against the balance ; this was about the beginning of October 1870 ; he had had the running-gears and wood work in the February preceding; after it was done he took it to his father's ; he paid his father's bill.

The blacksmith testified that plaintiff paid him $61 for ironing the wagon.

James Boud, father of plaintiff, testified : that Roudenbush was to make a wagon body for plaintiff, but could not make it as plaintiff wanted it ; and wanted witness to take the body for his claim ; witness said he would have to consult plaintiff ; witness did not see Roudenbush until they settled February 20th 1871, when Roudenbush said he would let part of the claim go ; could not let it all go ; witness said he would not do that ; witness had no further talk with him ; plaintiff told him to finish the wagon and they would settle.

On cross-examination he said : Roudenbush offered to take part of his bill off of the wagon ; he told witness his bill was to be paid by the wagon before the new arrangement ; before the body was bought ; the running-gears had been bought before. Roudenbush declined to take the whole bill ; the wagon was not done.

The plaintiff offered in evidence the record of an attachment-execution, " James Boud v. William H. Boud, garnishee of John Roudenbush, and all proceedings showing attachment to have been issued before the sale of this wagon."

He also offered to show that " defendant after he bought the wagon, when the sheriff attempted to replevy it, ran it into Chester county, and it was only produced after he was arrested on a charge of eloigning the goods."

The offers were severally objected to by the defendant, rejected by the court and bills of exceptions sealed.

The plaintiff closed and the court directed a nonsuit to be

[Boud *v.* Bronson.]

entered against him. The plaintiff moved to take it off; the court afterwards refused the motion.

The plaintiff took a writ of error ; he assigned for error :—

1, 2. Rejecting his offers of evidence.

3–5. Directing judgment of nonsuit and refusing to take it off.

*G. N. Corson*, for plaintiff in error.—This wagon had been delivered to plaintiff and was afterwards committed to Roudenbush to finish ; he was but a bailee and his acts could not affect plaintiff's title : 1 Bl. Com. Ch. 14, p. 427 ; Becker *v.* Smith, 9 P. F. Smith 469. As to nonsuit, Lehman *v.* Kellerman, 15 Id. 489.

*C. Hunsicker* (with whom was *H. B. Dickinson*), for defendant in error, cited Prichett *v.* Jones, 4 Rawle 260 ; Eagle *v.* Eichelberger, 6 Watts 31.

Mr. Justice MERCUR delivered the opinion of the court, March 13th 1876.

In this case the court below ordered a nonsuit. The question now arising is, should the evidence have been submitted to the jury ? The defendant contends that the evidence shows the transaction was substantially an agreement by which Roudenbush, a wheelwright, was to make and deliver to the plaintiff, at a price stipulated, the wagon in question, but when the defendant purchased it at constable's sale as the property of Roudenbush, it was unfinished, and the plaintiff had neither paid for it nor obtained possession of it. If these were the facts, and Roudenbush had furnished the materials, it is very clear the court committed no error in ordering the nonsuit.

We think, however, that this is not the only view presented by the evidence. The testimony is not very clearly stated in the paper-books, but as we understand it, there is some evidence going to establish this state of facts, to wit : " In 1869 Roudenbush resided in Montgomery county. He was indebted to the plaintiff, and also to the plaintiff's father. An agreement was entered into between the plaintiff and Roudenbush, by which the latter was to make the wagon. Before it was finished Roudenbush moved to Chester county. On leaving, he delivered the running-gears to the plaintiff. Not long after the plaintiff also bought from him the bed of the wagon. After the plaintiff had retained all these parts of the wagon in his possession for several months, and procured other materials, he made a new contract with Roudenbush for its completion, at a stipulated price for the whole cost of the wagon. He thereupon took to the shop of Roudenbush, near Valley Forge, the running-gears, body, iron work and materials for trimming and cover. As a part of the consideration the plaintiff was to pay the debt which his father had against Roudenbush.

[Boud *v.* Bronson.]

The plaintiff further testified that about the 20th February 1871, he settled with Roudenbush for the wagon, and that there was due on account of it a less sum than the debt due to his father, and that he subsequently paid the residue to his father, but had not taken the wagon from the shop when it was levied on.

If the jury should find this alleged statement of facts to be true, we think it takes the question of legal fraud out of the case.

There had been such an exclusive and long-continued possession of the property in the plaintiff, that his title could only be affected by actual fraud. There had been an open, visible change of the possession of the property. When Roudenbush moved out of the county, the plaintiff had accepted it. After retaining it in his exclusive possession for some six months, the fact that, under a new contract, the plaintiff placed the unfinished wagon in the possession of the former owner to be finished, is no fraud in law on the creditors of Roudenbush. The jury should be permitted to pass on the good faith of the whole transaction under proper instructions from the court: Dunlap *v.* Bournonville, 2 Casey 72; McMarlan *v.* English, 24 P. F. Smith 296. The third, fourth and fifth assignments are sustained.

As we are not furnished with a copy of the record referred to in the first assignment, we are not able to say there was error in its rejection.

The evidence covered by the second assignment is irrelevant.

Judgment reversed, and a *venire facias de novo* awarded.